IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 2:16-cr-00175

BRIAN D. TERRY,

        Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is the defendant's Motion to Suppress [ECF No. 27]. The government filed its Response [ECF No. 33], and at the direction of the court, both parties provided supplemental briefing [ECF Nos. 40, 49, 50]. The matter is now ripe for decision. For the following reasons, the defendant's Motion is **DENIED**.

BACKGROUND

In this case, I must determine whether the defendant has standing to challenge flagrant police misconduct. Here, police illegally applied a GPS unit to a car that the defendant was driving then later used the GPS to track and pull over the car while the registered owner was driving and the defendant rode along as a passenger.

The defendant, Brian Terry, is charged in a single-count indictment with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Indictment [ECF No. 1].

The Metropolitan Drug Enforcement Network Team ("MDENT") began monitoring the defendant's activities after Corporal Johnson, an MDENT agent, found remnants of drugs in trash placed outside a residence associated with the defendant. Mot. Suppress 2–3. On April 18, 2016, MDENT agents observed the defendant leaving the residence in a gold Kia Optima parked on a street in front of the residence. *Id.* at 3–4. Corporal Johnson and other MDENT agents followed the defendant to a Family Dollar store. *Id.* Once the defendant parked, Corporal Johnson approached the Kia and smelled marijuana. *Id.* at 4. Corporal Johnson then asked the defendant to produce the marijuana, and the defendant complied by producing a bag containing 5.9 grams of marijuana. *Id.* Corporal Johnson then searched the Kia, and, after finding nothing else incriminating, directed the defendant to get out of the Kia. *Id.* Once the defendant exited the Kia, Corporal Johnson wrote the defendant a misdemeanor citation for possession of marijuana. *Id.*

While Corporal Johnson interacted with the defendant, Detective Middleton, another MDENT agent, arrived with a copy of an earlier-obtained warrant for the residence associated with the defendant. Resp. 3. As Corporal Johnson interacted with the defendant, Detective Middleton surreptitiously placed a GPS tracker— admittedly without a warrant—onto the Kia. *Id.*; Tr. Proceedings Mot. Hr'g 16:16–23, 18:6–8 [ECF No. 38]. Indeed, Corporal Johnson admitted that he knew a warrant was required prior to placing the GPS unit, but he allowed the MDENT agent to place it nonetheless. *See* Tr. Proceedings Mot. Hr'g 28:18–23. Based on these troubling

2

facts, I ruled that the placement of the GPS tracker by the MDENT agents was a flagrant violation of the defendant's Fourth Amendment rights. *Id.* at 28:18–29:3.

Later that day, Corporal Johnson went to the Kanawha County Magistrate Judge and obtained a "ping" search warrant for the defendant's cellphone and a search warrant to place a GPS unit on the Kia—the same Kia on which officers placed a GPS unit earlier that day. Resp. at 4. Corporal Johnson omitted crucial pieces of information from his warrant application. *See* Tr. Proceedings Mot. Hr'g 20:18–21:5. In particular, he failed to mention that MDENT agents already placed the GPS on the Kia. *Id.* Indeed, the government concedes that the affidavit submitted by Corporal Johnson to attain the warrant "was insufficient to establish probable cause." Resp. Post-Hearing Mem. 1 n.1 [ECF No. 49].

Two days later, on April 20, 2016, MDENT agents used data from the GPS unit to track the Kia's trip to Columbus, Ohio, a city to which MDENT agents suspected the defendant traveled in order to obtain drugs.[1] Resp. 4. Based on the GPS tracking data, officers located and tailed the Kia once it returned to West Virginia later that night. *Id.*; *see also* Tr. Proceedings Mot. Hr'g 29:25–30:4. At around 11:00 P.M., Officer Hodge, another MDENT agent, "paced" the Kia and determined that the operator was exceeding the speed limit by five miles per hour. Resp. 4–5. After

---

[1] The MDENT agents tracked this trip *only* through GPS data. By April 20, 2016, the police were no longer obtaining "ping" data from the defendant's cellphone, indicating that the cellphone was turned off or disconnected. Resp. 4. Therefore, the agents utilized the GPS data to pinpoint the defendant's location before effecting the later traffic stop. *Id.*

3

"pacing" the Kia to determine its speed, officers used data from the illegally placed GPS unit to confirm that it was exceeding the speed limit. Tr. Proceedings Mot. Hr'g 30:5–11. Only after the speeding violation was confirmed via GPS data, Hodge pulled over the Kia. Resp. 4–5.

The registered owner of the Kia, Tamara Moore, was driving when police pulled over the vehicle, and *the defendant was a passenger. Id.*; Mot. Suppress 6; Mot. Suppress Ex. B, at 6 [ECF No. 27-2]; Tr. Proceedings Arraignment 8:9–20 [ECF No. 31]. Corporal Johnson wrote Ms. Moore a warning citation while Officer Petty, another MDENT agent, spoke with the defendant. Resp. 5. Officer Petty smelled marijuana and reported his findings back to Corporal Johnson. *Id.* Corporal Johnson then asked the defendant to step out of the vehicle. *Id.* After the defendant exited the Kia, Corporal Johnson performed a *Terry* frisk and felt a large object in the defendant's groin area. *Id.* at 5–6. When asked what the object was, the defendant stated that the object was seven ounces of methamphetamine.[2] *Id.* Officers then handcuffed the defendant and removed 195.5 grams of methamphetamine and 2.9 grams of marijuana from his clothing. *Id.* at 6.

The defendant was then detained, given *Miranda* warnings, and transported to South Central Regional Jail. Resp. 5–6. On the way to jail, the police taped their interactions with the defendant. *Id.* at 6. Additionally, MDENT agents recorded over

---

[2] The government concedes that MDENT agents gathered this statement while the defendant was in custody and prior to issuing the *Miranda* warnings; therefore, this particular statement is only admissible for a limited number of purposes, such as impeachment. Resp. 6.

4

thirty of the defendant's telephone calls made from jail. Mot. Suppress 7. In several of those calls, the defendant claims he made inculpatory statements regarding drug trafficking activities.[3] *Id.* The defendant now moves to suppress the methamphetamine and marijuana seized following the April 20, 2016, traffic stop and statements made on the way to and while in jail.

## LEGAL STANDARD

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Jones*, the Supreme Court determined that the placement and subsequent monitoring of a GPS tracking device on a vehicle constitutes a search. *United States v. Jones*, 565 U.S. 400, 404–05 (2012). Therefore, the government may not unreasonably place and monitor GPS units without running afoul of the Fourth Amendment. *See id.* "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment . . . ." *Katz v. United States*, 389 U.S. 347, 357 (1967). Where an unreasonable search occurs, the proper remedy is the exclusion of the evidence obtained via the search. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961).

However, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973) (citation omitted) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "A person

---

[3] Neither the content of the recorded trip to the jail nor the recorded calls have been disclosed to the court.

who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Therefore, in order to maintain a Fourth Amendment challenge, a defendant must show that he or she has standing to challenge the contested evidence. *Id.* In particular,

> a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 143–144).

Individuals—particularly passengers—have a lessened expectation of privacy in a vehicle. *See, e.g.*, *Rakas*, 439 U.S. at 148–49. Passengers are not entitled to challenge the constitutionality of a vehicular search unless they have a legitimate privacy interest in the searched vehicle through ownership or possession. *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992) ("The [Supreme] Court held that a passenger normally has no legitimate expectation of privacy in a car in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object."); *see also United States v. Monroe*, 396 F. App'x 33, 37 (4th Cir. 2010) (holding that a passenger did not have standing to challenge the search of a vehicle where he was not the owner of the vehicle). If a defendant is unable

6

to establish a privacy interest in the searched vehicle, the defendant lacks standing to challenge the search, and the court must deny the defendant's motion to suppress. *See id.*

## DISCUSSION

In their briefing, the parties focus solely on the attenuation doctrine and whether Ms. Moore's speeding violation purged the taint of the government's illegal GPS search. Neither party addresses whether the defendant has standing to challenge MDENT's use of the GPS unit to track Ms. Moore's car. After reviewing the evidence, I determine that this case ultimately turns on the defendant's lack of standing; however, before addressing standing, I am compelled to briefly address the police misconduct at issue in this case.

As I found during the hearing on this Motion, MDENT's conduct constitutes a flagrant constitutional violation: MDENT agents disregarded clear, settled case law; misled a magistrate judge; and utilized the fruit of the illegal GPS search to seek out and confirm the intervening crime's occurrence. The government asserts that an intervening traffic violation alone is sufficient to attenuate the pervasive taint of MDENT's onerous conduct; however, allowing an intervening circumstance to categorically attenuate the taint of police misconduct is a departure from Supreme Court precedent. *See Brown v. Illinois*, 422 U.S. 590, 603–04 (1975) ("No single fact is dispositive [in determining attenuation]. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the

Fourth Amendment to turn on such a . . . talismanic test."). It is imperative that courts consider all factors in the attenuation test—particularly the flagrancy of the police misconduct. *Id.* ("The temporal proximity of the [illegal search to the discovery of the evidence], the presence of intervening circumstances, and, *particularly*, the purpose and flagrancy of the official misconduct are all relevant [to attenuation analysis]." (emphasis added)). Indeed, attenuation analyses focus primarily on "considerations relating to the exclusionary rule and the constitutional principles which it is designed to protect." *United States v. Ceccolini*, 435 U.S. 268, 279 (1978). "[T]he purpose of the exclusionary rule is to deter undesirable police conduct, where that conduct is particularly offensive the deterrence ought to be greater and, therefore, the scope of exclusion broader." 6 Wayne R. LeFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.4(a) (5th ed.) (citation omitted).

Here, MDENT agents openly disregarded the law and exploited an illegal GPS search to further an investigation. That disregard undermines our system of justice. *See Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting) ("If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."). Such deliberate indifference to the law invites exclusion; however, exclusion is a remedy afforded only to those with standing.

The defendant lacks standing to challenge MDENT's GPS search of Ms. Moore's car on April 20, 2016. As with other vehicular searches, a defendant has

8

standing to challenge a GPS search only where that defendant asserts a property or possessory interest in the searched vehicle. *See United States v. Jones*, 565 U.S. 400, 404 n.2 (2012) (determining that standing was not an issue because the defendant was the exclusive driver of the vehicle and "he at least had the property rights of a bailee"); *United States v. Gibson*, 708 F.3d 1256, 1275–79 (11th Cir. 2013) (determining that a defendant who borrowed a vehicle that was registered to another person had standing to challenge a GPS search while the vehicle was in his possession); *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011) (determining that a defendant borrowing a vehicle after a GPS unit had been placed without a warrant had standing to challenge the use of the GPS to track his movement during the time he was in possession of the vehicle). Here, the defendant had a possessory interest in the Kia when the MDENT agent attached the GPS unit because he was driving the Kia at that time. However, the defendant adduced no evidence that he owned the car; indeed, the record indicates Ms. Moore is the registered owner of the Kia. Therefore, he lacks an ownership interest in the Kia.

Because the defendant lacks an ownership interest in the Kia, his standing is limited to times when he actually possessed the vehicle. The record indicates that the defendant relinquished control over the Kia prior to MDENT's use of the GPS tracker on April 20, 2016, because he was a passenger when MDENT agents pulled over the Kia. Therefore, the defendant had no protectable Fourth Amendment interest in the

Kia on April 20, 2016, and the defendant lacks standing to challenge the GPS search of the Kia on that day. Accordingly, the defendant's Motion must be **DENIED**.

## CONCLUSION

Because the defendant neither owned nor possessed the Kia when police used the GPS unit to track and bring about the traffic stop on April 20, 2016, I **FIND** the defendant lacks standing to challenge the GPS search on that day. Accordingly, I **ORDER** that the defendant's Motion to Suppress [ECF No. 27] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: March 16, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE